**Edward SEXTON**

v.

**UNITED STATES of America.**

**Civ. A. 3–6509–B.**

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 21, 1972.

James A. Johnston of Johnston, Polk, Larson, Cloutman & Dixon, Dallas, Tex., for plaintiff.

Frank D. McCown, U. S. Atty., William F. Sanderson, Asst. U. S. Atty., for defendant.

## JUDGMENT AND MEMORANDUM OPINION

HUGHES, District Judge.

In this case Edward Sexton has petitioned for a writ of habeas corpus alleging that he is being confined in the Federal Correctional Institute at Seagoville, Texas in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. After a hearing at which testimony was offered by the petitioner and the respondent the Court considered the pleadings, the testimony, the argument and briefs of the parties and finds as follows:

1. Sexton is presently incarcerated in the Federal Correctional Institution in Seagoville, Texas, having been sentenced to the custody of the Attorney General under the Youth Correction Act. (18 U.S.C. § 5010(b)).

2. During his incarceration Petitioner was put on the Institution's work release program and was on such program in November 1972.

3. In September 1972, Petitioner appeared before the "Parole judge", a member of the Youth Correction Division of the Board of Parole. Three weeks later he was advised that he would be paroled on November 16, 1972.

4. A certificate of parole (Px1) was issued on November 7, 1972, signed by the Youth Correction Division Executive, Claude S. Nock, Jr., ordering that "Edward Lee Sexton be paroled on November 16, 1972." The "Conditions of Parole" contained in the Certificate of Parole were agreed to and signed by Sexton on November 12, 1972. The warden, Jack H. Wise, likewise signed the release showing that Sexton "was released on the 16th day of November, 1972." The execution by the warden was sometime prior to November 14, 1972.

5. On November 13, 1972, Sexton was informed by an officer of the Seagoville Institution that he was not going to be paroled. (Gx2).

6. On the same date the Youth Correction Division was contacted by a member of the Seagoville staff and advised that Sexton had violated an institutional rule relating to his work release program. The person making the telephone call did not testify.

7. A written report of the alleged infraction was mailed to the Youth Division on November 16, 1972. (Gx3).

8. An affidavit attached to Respondent's post hearing brief, signed by Daniel J. Copodanna, pre-release analyst, Youth Correction Division stated that an order on November 28, 1972, re-opened Petitioner's case and rescinded the parole grant. The record of the hearing was not introduced nor was the order rescinding parole introduced.

9. Petitioner remains in custody.

10. Petitioner was given no notice to appear at the hearing of the Youth Correction Division at which his parole was rescinded nor was he given any written statement of the charges on which the action rescinding his parole was based.

The issue before this Court is whether the United States through its agent, the United States Board of Parole, Youth

Correction Division, has abridged the Petitioner's constitutional right of due process in rescinding the Certificate of Parole issued to Edward Lee Sexton.

Without commenting on or determining the admissibility or competency of the government's evidence, this Court is compelled to consider the overriding constitutional issue raised by the procedure attendant to the rescission of the Certificate of Parole. The Petitioner had no hearing before the Board or one of its officials prior to the Board's action on rescission. The constitutional issue is whether the Fifth Amendment's due process clause requires the Board to afford individuals like Sexton an opportunity to be heard before rescinding their order of parole. This Court believes that Sexton is entitled to minimal due process before rescission of his parole order.

 The threshold question is whether Sexton had any right which the Board has deprived him without the requisite due process. The Supreme Court in considering the applicability of due process standards to parole revocations declared that procedural protections are due when "an individual will be 'condemned to suffer grievous loss.'" Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The government contends that it has not deprived Sexton of "liberty and property" because he never was outside their custody and the Board's action is one within their discretion. This Court, however, concludes that the Board's approval of the parole, Sexton's acceptance of the conditions of the parole, and the acknowledgement by the warden gave Sexton an interest in liberty which had ripened into a right which demands protection under the Fifth Amendment. Sexton stands accused of having violated a rule, and but for this he was entitled to release. The unfavorable fact determination on the violation will subject the Petitioner to incarceration, when otherwise he would have been released. When a person's liberty is at stake, the constitution requires that there be accurate fact finding and fair procedures. In the present case, the Board of Parole acted without giving Sexton notice or a hearing by which he could have conveyed any excuse or instance of mitigation which could have affected the decision for rescission.

 The Supreme Court has guaranteed procedural due process at revocation proceedings where economic benefits such as welfare payments, public housing and public employment were being denied. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (welfare payments); Thorpe v. Housing Authority, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1967) (public housing); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952) (public employment). A prospective parolee who has been approved for parole enjoys a status as important as those suffering economic deprivation and is entitled to minimal due process safeguards before rescission of his parole. The Supreme Court has decided that probationers and parolees are entitled to due process at revocation hearings. Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) (probation revocation); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation). Upon due process and equal protection grounds, it is inconsistent and unfair to deny Sexton the right of minimal due process before the Board acts on rescission of the parole.

It is therefore Ordered, Adjudged and Decreed that the application for writ of habeas corpus be and is hereby granted unless within 60 days the Petitioner is granted a hearing with due process as outlined in Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), before the Youth Correction Division of the Board of Parole.