Accordingly, judgment shall be entered for the defendants.

**Sandy Lee BATCHELDER**
**(Prisoner #8403)**

v.

**Frank F. KENTON, Warden, Lompoc Correctional Facility.**

**Civ. No. 73-2880-F.**

United States District Court,
C. D. California.

Feb. 5, 1974.

John K. Van de Kamp, Federal Public Defender by Terry Amdur, Deputy Federal Public Defender, Los Angeles, Cal., for petitioner.

William D. Keller, U. S. Atty. by Matthew A. Schumacher, Asst. U. S. Atty., Los Angeles, Cal., for respondent.

## MEMORANDUM AND ORDER

FERGUSON, District Judge.

This action involves a petition for a writ of habeas corpus, brought by an inmate at the Federal Correctional Institution at Lompoc, California. The relevant facts are as follows:

1. Petitioner was charged in the United States District Court, Southern District of California, San Diego, under 21 U.S.C. § 176a for importation of marijuana. Petitioner plead guilty on November 18, 1968 and received a sentence of five years.

2. Petitioner served a portion of his sentence and was subsequently paroled on September 25, 1970.

3. On June 6, 1973 Mr. Batchelder's parole was revoked after two hearings, and he was returned to prision at Lompoc.

4. On September 21, 1973 petitioner was granted a reparole date of October 15, 1973.

5. On October 13, 1973 while still in Lompoc prison, Mr. Batchelder received notice that he was under suspicion of trafficking in narcotics while on his work detail. Petitioner denied the accusation.

6. Acting on the basis of "confidential information" and "investigative reports", a board of the Bureau of Prisons filed an Incident Report, ordered Mr. Batchelder held in Lompoc prison beyond the October 15 release date and placed the prisoner in an Intensive Treatment Unit.

7. Mr. Batchelder was not given a hearing, nor the right to confront or cross-examine his accusers, nor the right to have counsel present.

8. On the basis of the information received from the Administrator of the Lompoc prison, the Parole Board rescinded the parole grant on November 13.

9. A review hearing was held on November 14, and on November 30 the Board ordered Mr. Batchelder to continue to serve the remainder of his sentence. At the hearing, petitioner was again denied the right to confront or cross-examine his accusers, and was denied the right to have counsel present.

10. No charges have been filed by the United States with regard to the alleged drug trafficking.

11. Petitioner is presently held in the Lompoc facility, but is scheduled to be transferred to McNeil Island Penitentiary.

Mr. Batchelder contends that he has been denied due process of law in that:

(1) he has been detained in prision beyond his parole date;

(2) he was refused assistance of counsel or rights of confrontation and cross-examination at the November 14 hearing; and

(3) he is threatened with a punitive transfer to a stricter correctional facility.

The actions taken against the petitioner are all the result of a factual determination that Mr. Batchelder was trafficking in narcotics. The Incident Report which contained the order to keep the petitioner in prison beyond October 15 notes that, "It is the finding of the committee that: . . . you committed the prohibited act as charged." The same factual finding formed the basis of the Parole Board's order of November 30. The Bureau of Prisons filed the Incident Report findings without a hearing. The Parole Board arrived at its findings at a hearing without permitting petitioner the right to counsel or confrontation of his accuser.

■ Although the prohibited act Mr. Batchelder is accused of committing is presumably a violation of federal narcotics laws, no criminal charges have been brought against him. In this posture, the act complained of must be viewed as a violation of prison regulations. For the petitioner, however, the consequences of a determination that a regulation has in fact been violated are felt in his parole status. It should be noted that this court is not now addressing itself to consequences that might be felt in prison discipline, such as confinement in an intensive treatment unit, change in work detail, deprivation of visiting privileges, or any similar punishment that has a correctional aim. These have traditionally been regarded as elements of the science of penology, as subjective determinations made in correctional treatment. A man's interest in his parole status, however, is subject to more judicial scrutiny.

■ The government concedes that in the instance of a parole revocation a parolee would be entitled to a hearing and to confront and cross-examine his accusers. It is argued, however, that Mr. Batchelder did not have his parole revoked, because he never left the prison walls; since he had not yet attained liberty, the due process guarantees attendant to a revocation of liberty had not yet attached. The argument has only one-dimensional appeal. While it is true that the administration of the correctional system does not fall to the judiciary, it is not true that the courts have no duty at all to those within the institutions.

■ A release-date system for parole, such as that used here, ascribes a status to the potential parolee, an interest in his future liberty. For the incarcerated prisoner, this status involves more than

just "a mere anticipation or hope of freedom," *cf.* United States ex rel. Bey v. Conn. State Board of Parole, 443 F.2d 1079 (2nd Cir. 1971); it is a recognition of an accomplishment. Revocation of that status may involve many more years in prison. The fact of a revocation of a release date becomes part of a prisoner's record, and can mar his future chances for parole. The interest created by this procedure must be viewed as "substantial." See Sexton v. United States, 352 F.Supp. 147 (N.D.Texas 1972).

On or before September 21, 1973, a subjective analysis of Mr. Batchelder's progress in the correctional process was made, and a decision reached to release on a date in the near future. At that point, the petitioner had attained a level in the parole hierarchy, and was promised liberty at a certain time. This status, this interest in his future liberty, was subsequently rescinded on the basis of "a wholly retrospective factual question:" whether the prisoner had in fact acted in violation of one or more conditions of his parole status. See Morrissey v. Brewer, 408 U.S. 471 at 479, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

As the Supreme Court noted in both *Morrissey* and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), a revocation decision has two analytically distinct components. A decision not to honor the release date likewise has the same two elements: the first is a factual question as to whether the prisoner did in fact violate the prison regulations and was trafficking in narcotics, and the second (non-factual) as to whether the potential parolee should consequently be further detained in prison for his program of rehabilitation. It is the first component with which the Court in those two cases was concerned, as this court is in the instant case.

Here, too, there is no great administrative burden attendant to conducting a fair hearing; in fact, the procedures already followed are readily adaptable to the two-step process suggested in *Morrissey*. In Mr. Batchelder's case, the Bureau of Prisons' committee met initially and decided to continue the petitioner beyond the release date; within a month, the Parole Board met to finally determine the case. It is clear that these are analogous to the preliminary and revocation hearings proposed in *Morrissey*. It will work no additional hardship for the two boards to subject them to fair and impartial procedures for their fact-finding. Because the nature of the inquiry here is nearly identical to that of a normal parole-revocation, and because the interest in conditional liberty is in many ways as valuable and would inflict a similar "grievous loss" if terminated, the same procedures and rights should be insured. In addition, it is clear that because the major focus of the inquiry is a factual one into an alleged serious infraction, and because the purpose of requiring a hearing is to afford adequate confrontation and cross-examination of the prisoner's accusers, petitioner must also be allowed to have the assistance of counsel. See Gagnon v. Scarpelli, *supra,* at 790, 93 S.Ct. 1756; Morrissey v. Brewer, *supra* (Brennan, J., concurring); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

██ Petitioner also claims that his transfer to a maximum security prison would be punitive, and a violation of due process. As was indicated *supra,* the role of the courts in the correctional system is limited. A change in treatment of a prisoner is based on a subjective evaluation of his need for one correctional technique or another; suffice it to say here that confinement in a stricter prison is a decision to be made by penologists. To be consistent with the reasoning of the *Morrissey* case, this is analogous to the second element of the two-step revocation decision. It is not an accusatory, fact-finding procedure, and hence is not susceptible to a traditional hearing with counsel present.

██ Thus, it is clear that prison officials have authority to discipline a prisoner by placing him in a stricter confine. However, it is also clear that they

do not have the authority to punish that same prisoner by unilaterally stripping him of his already-acquired parole status, without guarantees that the fact-finding decision will be a fair one.

The court finally notes that 28 Code of Federal Regulations § 2.1 et seq., as published in 38 Fed.Reg. 26652 (Sept. 24, 1973), invokes far-reaching changes and may provide for adequate procedures in a case such as this. However, the introductory statement to those rules makes it clear that they are to apply only to Region I (Northeast), and federal prisoners outside that region are governed by "the present rules." The court has already determined that those rules are inadequate. Therefore, whatever possible justification for this differing set of procedures, or whatever the merit of petitioner's Equal Protection argument, a full consideration is unnecessary for the disposition of this case.

It is therefore ordered that petitioner shall be released from confinement and placed on parole unless within 30 days from this date he is accorded a hearing in accordance with the minimum due process requirements set forth in *Morrissey* and in addition thereto the right of counsel.