Edward **SEXTON**, Petitioner-Appellee,

v.

**Jack H. WISE**, Warden, Federal Correctional Institute, and United States of America, Respondents-Appellants.

No. 73–1460.

United States Court of Appeals, Fifth Circuit.

May 30, 1974.

---

Frank D. McCown, U. S. Atty., Ft. Worth, Tex., William F. Sanderson, Jr., Asst. U. S. Atty., Dallas, Tex., for respondents-appellants.

James A. Johnston, Dallas, Tex., for petitioner-appellee.

Before BROWN, Chief Judge, and RONEY and GEE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

■■ This appeal presents the question of whether prison officials must provide notice and a hearing to a prisoner, granted a future date for parole but not yet at liberty, whose parole was summarily rescinded. The District Court held an evidentiary hearing and ordered that Sexton's writ of habeas corpus be granted, unless within 60 days the Youth Correction Division of the Board of Parole provide a hearing with due process as outlined in Morrisey v. Brewer, 1972, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484. We hold that Sexton was not entitled to a hearing since the process of obtaining parole had never reached completion and the due process protections of Morrisey v. Brewer, applicable to revocation, were not applicable. Accordingly, we reverse and remand the judgment of the District Court.

Appellee Sexton was convicted and sentenced to custody of the Attorney General under the Youth Correction Act (18 U.S.C.A. § 5010(b)). Officials of the Federal Correctional Institution at Seagoville, Texas, approved Sexton for the "Work Release Program" for federal prisoners and he was assigned to begin working for Mr. Ray Bostick on September 29, 1972. According to Sexton's testimony, he worked for Mr. Bostick approximately three weeks.[1] Without notifying prison officials, as the express terms of the release and regulations prescribed, Sexton left his job with Mr. Bostick to begin a new job with an employer who was not an approved work release employer. Sexton admitted that he knew leaving an assigned job without permission of the Warden was a violation of the Work Release Program.

Without knowledge of this unauthorized change in employment, the Youth Correction Division Executive issued a certificate of parole on November 7, 1972 ordering Sexton be paroled on November 16, 1972. Sexton signed the accompanying conditions of the parole certificate on November 12, 1972. At a date prior to November 14, 1972 the Warden, Jack H. Wise, signed the release with the accompanying statement that Sexton "was released on the 16th day of November, 1972,"[2] the only date appearing on the form.

When Sexton's violation of the Work Release Program came to light on November 13, 1972 a Bureau of Prisons Incident Report was drawn up by local prison officials. The U.S. Board of Parole Youth Division Executive Branch in Washington, D.C. was notified of the violation on November 14, 1972.

1. The District Court record reflects that Mr. Bostick told the Government attorney that Sexton ceased working for him on October 7, 1972. This would have made Sexton's term of employment with Mr. Bostick just over one week.

2. At the District Court hearing, Associate Warden Walter L. Lumpkin, explained why Warden Wise's signature appeared on Sexton's release with the date November 16, 1972 and the statement that Sexton was to be released on that date. For administrative convenience, it was the general procedure of the Bureau of Prisons to execute Certificates of Parole in advance of the actual release date. In this instance Warden Wise signed sometime prior to November 14 since he expected to be absent and was in fact absent from the Institution on November 16, 1972.

Sexton was informed of a violation report by a case worker[3] at the Institution on November 13, 1972 and learned he was not going to be paroled. Sexton testified that he never received any written notice of the alleged violations which precipitated the loss of his parole. A meeting of the Youth Correction Division followed on November 28, 1972 but Sexton was given no notice to appear nor was he given any written statement of the charges against him. Sexton's parole was officially rescinded at this hearing.

Since Sexton was never officially paroled, and the actions taken did not amount to a revocation, we do not reach the issue of the constitutionality of the November 28, 1972 meeting conducted by the Youth Correction Division of the Board of Parole. Until a parole is finalized, no constitutional protections associated with a parole *revocation* embrace the intended parolee.

It is well settled that eligibility for parole is within the wide latitude of discretion vested in the Board of Parole. Thompkins v. U. S. Board of Parole, 5 Cir., 1970, 427 F.2d 222; United States v. Frederick, 3 Cir., 1968, 405 F.2d 129; Walker v. Taylor, 10 Cir., 1964, 338 F.2d 945. The Regulations for paroling a prisoner sentenced under the Youth Correction Act, *supra,* provide that the Youth Correction Division may conditionally release a prisoner after reasonable notice to the Director of the Bureau of Prisons. (28 C.F.R. § 2.6). Notice of a future date for release on parole, however, does not bestow upon the intended parolee a right to that parole prior to final physical release by the Bureau of Prisons. Before a prisoner can be officially paroled, the final step of physical release must be taken.

While a prisoner remains in the custody of prison officials, he continues to be subjected to their supervision and the wide discretion of the Board of Parole. The Regulations are clear that until final physical release occurs, the Board does not relinquish its broad discretionary powers to rescind any future parole. (28 C.F.R. § 2.20).

§ 2.20 Release; discretionary power of Board.

When an effective date has been set by the Board, release on that date shall be conditioned upon continued good conduct by the prisoner and the completion of a satisfactory plan for his supervision. The Board may, on its own motion, reconsider any case prior to release and may reopen and advance, postpone, or deny a parole which has been granted. The Board may add to or modify the conditions of parole at any time.

The Board never gave up its custody of Sexton and therefore could properly rescind his conditional parole without affording him a full *Morrisey* hearing. The notice of denial was not tantamount to a revocation of parole invoking full constitutional safeguards. To require a full *Morrisey* hearing at this stage would be an extravagant remedy infringing on the discretionary powers of the Board of Parole.

Reversed and remanded.

---

3. The Federal Correctional Institution at Seagoville, Texas, provided a team of five case workers who submitted recommendations for parole to the local parole Judge who was a member of the Parole Board.