Tony WILLIAMS

v.

**UNITED STATES BOARD OF PAROLE**
and John J. Norton, Warden, Federal
Correctional Institution, Danbury, Con-
necticut.

Civ. No. B-921.

United States District Court,
D. Connecticut.

Oct. 21, 1974.

Dennis E. Curtis, Stephen Wizner,
New Haven, Conn., for plaintiff.

Peter C. Dorsey, U. S. Atty., Peter
Mear, Asst. U. S. Atty., New Haven,
Conn., for defendant.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

This petition for a writ of habeas cor-
pus raises the question whether United
States ex rel. Felder v. United States Bd.
of Parole, 307 F.Supp. 159 (D.Conn.
1969) remains good law. In *Felder*, this
Court ruled that a "parole grantee",
i. e., a federal prisoner whose date of
parole has been approved but who has not
yet been actually released from prison,
is not entitled to notice and a hearing
if the Board of Parole (hereinafter
"Board") summarily rescinds the parole
prior to the effective parole date. See
also Sexton v. Wise, 494 F.2d 1176 (5
Cir. 1974); Koptik v. Chappell, 116 U.S.
App.D.C. 122, 321 F.2d 388 (1963);

Bach v. Mitchell, Civ. No. B–376 (D. Conn. December 28, 1971).

## I

The petitioner, Tony C. Williams, was committed to the Federal Correctional Institution, Danbury, Connecticut (hereinafter "F.C.I.") on September 22, 1972, to serve a two-year sentence of imprisonment imposed by the United States District Court for the Northern District of New York, Port, J. On July 30, 1973, the Board granted him parole, effective on September 27, 1973. In order to afford him the opportunity to reintegrate into the community, Williams was transferred to a Community Treatment Center (hereinafter "C.T.C.") in New York City in August, 1973. It was anticipated that on the effective date of his parole he would be released from the C.T.C.

However, because he allegedly displayed "hostility and resistance to the rehabilitative program" at the C.T.C., Williams was returned to the F.C.I. on September 4, 1973. Two weeks later, without notice or hearing, Williams's parole was rescinded. Thereafter, on November 7, 1973, the Board granted Williams another parole hearing at which time his case was continued to expiration. This suit followed.

## II

A threshold question is whether this action is moot because during the pendency of the suit Williams was mandatorily released. While not directly on point, guidance is provided by Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), and Carafas v. La-Vallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). In *Sibron*, the Supreme Court stated that the "mere possibility" that "adverse collateral legal consequences" will follow from a prior conviction is sufficient to rescue a case from ending "in the limbo of mootness," 392 U.S. at 55, 88 S.Ct. at 1898; in *Carafas*, a habeas corpus action, the Court held that the petitioner's release from custody did not render moot an issue concerning the legality of his conviction raised when he sought relief while incarcerated.

Directly relevant to the present petition is Hahn v. Burke, 430 F.2d 100 (7 Cir. 1970). There the court found that the completion of a petitioner's sentence did not moot his timely filed habeas corpus challenge to certain procedural due process inadequacies at a probation revocation hearing. The court determined that the revocation had affixed "a permanent blemish" to the petitioner's record, even though it was not of the same level *of seriousness as a conviction of a crime.* 430 F.2d at 102; see also Hewett v. North Carolina, 415 F.2d 1316, 1320–1321 (4 Cir. 1969).

In the instant case, the petitioner may incur adverse collateral legal consequences as a result of the rescission of his parole. The rescission was not, as the government argues, "a minor matter" which parole and prison officials as well as judges will in the future "ignore." The fact that his parole was rescinded remains as a stigma on petitioner's record. Although discharged from prison, the petitioner is still subject to supervision by a United States Probation Officer, 18 U.S.C. § 4164; his supervising officer may impose discretionary restrictions upon the petitioner's activities, or may revoke his mandatory release for a minor infraction of the rules, if the officer possesses information that the petitioner had previously violated the conditions of his release to a C.T.C. In addition, in the event the petitioner has a future encounter with the law, the sentencing judge might take into account the parole rescission as a factor mitigating against probation, a sentence under the provisions of 18 U.S.C. § 4208(a)(2), or some other sentencing disposition. Under these circumstances, the issues before the Court are not moot. Cf. Newkirk v. Butler, 499 F.2d 1214, 1219 (2 Cir. 1974).

## III

Turning to the merits, the Court is of the opinion that, in the light of princi-

ples enunciated in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and their progeny, the reasoning in *Felder* no longer is dispositive of the claims presented by petitioner.

■■ Procedural due process is now required whenever an inmate will be "condemned to suffer grievous loss." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (Frankfurter, J., concurring), quoted in Morrissey v. Brewer, supra, 408 U.S. at 481, 93 S.Ct. 1756. Numerous cases recognize that in the prison context the imposition of punishment, a change of status with adverse consequences, or the withdrawal of privileges may constitute a grievous loss calling for procedural safeguards. See, e. g., Newkirk v. Butler, supra; Gomes v. Travisono, 490 F.2d 1209 (1 Cir. 1973); Sostre v. McGinnis, 442 F.2d 178 (2 Cir.), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1971); Jackson v. Godwin, 400 F.2d 529 (9 Cir. 1968); Catalano v. United States, 383 F.Supp. 346 (D.Conn.1974); Diamond v. Thompson, 364 F.Supp. 659 (M.D.Ala.1973); Downes v. Norton, 360 F.Supp. 1151 (D. Conn.1973).

While the case *sub judice* does not concern a revocation of parole or probation as in *Morrissey* and *Gagnon*, but rather involves the rescission of an unexecuted grant of parole, it is difficult to distinguish these various proceedings when relevant principles of due process are applied. In this Circuit, for example, the Court of Appeals recently held that in parole review—clearly a proceeding in which an inmate has a smaller degree of vital interest than a prisoner facing a parole rescission—the New York State Parole Board must furnish state prisoners a written statement of reasons when release is denied. Johnson v. Chairman of New York State Parole Board, 500 F.2d 925 (2 Cir. 1974). In the course of the decision, Judge Mansfield stated:

Parole [after Morrissey] was thenceforth to be treated as a "conditional liberty," representing an "interest" entitled to due process protection. A prisoner's interest in prospective parole, or "conditional entitlement," must be treated in like fashion. To hold otherwise would be to create a distinction too gossamer-thin to stand close analysis. Whether the immediate issue be release or revocation, the stakes are the same: conditional freedom versus incarceration.

500 F.2d at 928.

In the light of this analysis, if procedural safeguards must be granted to a prisoner who has a "non-vested" interest in prospective parole, it would seem that due process is *a fortiori* required for a parole grantee whose "conditional entitlement" has become vested.

The government seeks to distinguish these formidable authorities on the ground that Williams has suffered no loss of "actual" liberty. Cf. Sexton v. Wise, supra. This argument, however, overlooks the serious and immediate privations which occurred as a direct result of the Board's unilateral action which divested Williams of his already-acquired parole status.

The Board's decision in July, 1973 to release Williams had a critical impact on his prospects for life and liberty. Cf. Johnson v. New York State Board of Parole, supra. As of September 27th, it meant the difference between freedom and incarceration. He could look forward to joining his family, participating in community, educational, religious, civic and recreational activities, and becoming a useful member of society. Moreover, in anticipation of his early release, Williams was transferred to the C.T.C. This enabled him to live in a less restrictive environment, to visit his family, to obtain employment and to strengthen personal relationships while under supervision. The rescission not only effectively deprived him of these benefits and the new status he was already enjoying as a parole grantee, but

also resulted in an increased period of incarceration of six months.

In the Court's view, therefore, since there was a profund change in Williams's status due to the rescission of the unexecuted grant of parole, Williams was entitled to the basic elements of rudimentary due process as set forth in *Morrissey-Gagnon*. See Batchelder v. Kenton, 383 F.Supp. 299 (C.D.Cal.1974); In re Prewitt, 503 P.2d 1326 (Cal.S.Ct. 1972).

## IV

The institutional review hearing in November did not, as the government contends, provide Williams with the process due him. The purpose of the hearing was merely to determine the feasibility of a reparole; there was no separate adversary proceeding relating to the propriety of rescinding petitioner's parole. While Williams did appear in person with an attorney, he had received no prior notice of the charges against him, nor was he permitted to call witnesses or confront and cross-examine his accusers. In addition, there was no statement by the decision-maker concerning the evidence relied on and the reasons for the rescission. The absence of these procedural safeguards was most crucial because Williams firmly denied he violated any rules at the C.T.C. Moreover, Williams' attorney was prevented from effectively defending his client. At the outset of the hearing, the examiner expressed his opinion that "Its [sic] hard to keep a lawyre's mouth shut" and, therefore, cautioned Williams' counsel "not to act in a legal capacity" and further ruled that he would not listen to any "legal aspects of the case."

Thus, it is evident that Williams, contrary to the mandate of fundamental fairness, was denied a meaningful hearing where he might rebut adverse evidence and present favorable evidence with respect to his parole rescission.

## V

Under these circumstances, since a hearing consistent with the *Morrissey-*

*Gagnon* standards will not serve any useful purpose because the petitioner is presently on parole, it is hereby

Ordered that the respondents expunge the petitioner's parole rescission from any and all records maintained by them.