Robert DRAYTON, Petitioner,

v.

Cecil McCALL, Individually and in his capacity as Chairman, United States Parole Commission, Members of the Parole Commission, Individually and in their capacity as Members of the Parole Commission, Stanley B. Kruger, Individually and in his capacity as Parole Hearing Examiner, William L. Quirk, Individually and in his capacity as Parole Hearing Examiner, and Raymond Nelson, Warden, Federal Correctional Institution, Danbury, Connecticut, Respondents.

Civ. No. B–77–424.

United States District Court,
D. Connecticut.

Jan. 27, 1978.

Judith P. Resnik, Jerome N. Frank, Legal Services Organization, New Haven, Conn., for petitioner.

Raymond L. Sweigart, Asst. U. S. Atty., New Haven, Conn., for respondents.

## MEMORANDUM OF DECISION

DALY, District Judge.

■ The issue in this habeas corpus action is the continued validity of the District of Connecticut rule mandating that the United States Parole Commission (the Commission) provide the due process safeguards of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), in parole rescission hearings. This rule, originally established in *Williams v. U. S. Board of Parole*, 383 F.Supp. 402 (D.Conn.1974), was later reaffirmed in light of *Woff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *Metz v. Norton*, B–74–89 (D.Conn. 1976). The Commission argues that the due process analysis utilized by the Supreme Court in *Morrissey* and *Gagnon* is outdated, and that under the new Supreme Court analysis this petitioner has only a minimal due process interest because the discretion exercisable by the Commission in rescinding parole is so broad as to make the expectation of future liberty unjustified. See *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Because of the grievous impact of parole rescission upon the parole grantee, the limited factual predicates upon which parole may be rescinded, and the important contributions that *Morrissey* and *Gagnon* protections make to the parole decision-making process, this Court holds that *Morrissey-Gagnon* procedures are still required for parole rescission hearings.

## FACTS

On October 20, 1977, the Commission held a regular review hearing concerning the petitioner's eligibility for parole. On October 31, the Commission decided to grant the petitioner parole effective February 14, 1978. On November 7, 1977, before petitioner received notification of the parole grant, the Bureau of Prisons informed the Commission that the petitioner had forfeited twenty-five days of statutory good-time for institutional misconduct. As a result, the Commission decided to reopen the petitioner's case and schedule him for a rescission hearing on the next available docket. The petitioner was informed both of the original decision to parole and of the decision to reopen by Notices of Action dated November 8, 1977.

On December 16, 1977, the Commission held a rescission hearing in accordance with the procedures outlined in the Commission

regulations, 28 C.F.R. § 2.34 (1977).[1] Under these regulations, the inmate must be given notice of the charges of misconduct to be discussed at the hearing, and, if the parole is rescinded, a written statement of the findings of misconduct and the evidence relied upon by the Commission. He is allowed to present only documentary evidence, and may be represented by a person of his choice. 28 C.F.R. § 2.34(a)(1). The representative's participation, however, is restricted to a short statement at the conclusion of the interview conduct by the hearing panel, and to the provision of further information requested by the panel. 28 C.F.R. § 2.13 (1977). The parole grantee is not allowed to seek the advice of counsel during the hearing. Furthermore, confrontation and cross-examination is not permitted.

This procedure contrasts sharply with the due process protections mandated in *Morrissey-Gagnon*. In particular, *Morrissey* requires that the evidence against the inmate be disclosed, and that the parolee be allowed to present witnesses. The hearing procedures must also give the parolee the opportunity to confront and cross-examine adverse witnesses "unless the hearing officer specifically finds good cause for not allowing confrontation." *Morrissey v. Brewer, supra,* 408 U.S. at 489, 92 S.Ct. 2593. In *Gagnon*, the Supreme Court established a flexible right to appointed counsel in probation and parole revocation hearings. Refusing to find an absolute right to the assistance of an attorney, the Court

1. 28 C.F.R. § 2.34 (1977) governs parole rescission, and provides as follows:

(a) When an effective date of parole or mandatory parole has been set by the Commission, release on that date shall be conditioned upon continued good conduct by the prisoner. If a prisoner has been granted parole and has subsequently been charged with institutional misconduct sufficient to become a matter of record, the Regional Commissioner shall be advised promptly of such misconduct. The prisoner shall not be released until the institution has been notified that no change has been made in the Commissioner's order to parole.

(1) Upon receipt of information that a prisoner has violated the rules of the institution, the Regional Commissioner may retard the parole grant for up to sixty days without a hearing or may retard the parole grant and schedule the case for a rescission hearing. If the prisoner was confined in a Federal prison at the time of the order retarding parole, the rescission hearing shall be scheduled for the next docket of parole hearings at the institution. If the prisoner was residing in a Federal community treatment center or a state or local halfway house, the rescission hearing shall be scheduled for the first docket of parole hearings after return to a Federal institution. When the prisoner is given written notice of the Commission action retarding parole, he shall be given notice of the charges of misconduct to be considered at the rescission hearing. The purpose of the rescission hearing shall be to determine whether rescission of the parole grant is warranted. At the rescission hearing the prisoner may be represented by a person of his choice and may present documentary evidence.

(2) An institution discipline committee hearing conducted by the institution resulting in a finding that the prisoner has violated the rules of his confinement, may be relied upon by Commission as conclusive evidence of institutional misconduct.

(3) Consideration of disciplinary infractions in cases with presumptive parole dates may be deferred until the commencement of the next in-person hearing or the prerelease record review required by § 214(b). While prisoners are encouraged to earn the restoration of forfeited or withheld good time, the Commission will consider the prisoner's overall institutional record in determining whether the conditions of a presumptive parole date have been satisfied.

(4) If the parole grant is rescinded, the prisoner shall be furnished a written statement of the findings of misconduct and the evidence relied upon.

(b)(1) Upon receipt of new information adverse to the prisoner regarding matters other than institutional misconduct the Regional Commissioner may refer the case to the National Commissioners under the procedures of § 2.17(a) with his recommendation and vote, to retard a previously granted parole. If parole is retarded the case shall be scheduled for a hearing on the next docket of parole hearings following return to a federal institution.

(2) The prisoner shall be given notice of the nature of the new adverse information upon which the rescission consideration is to be based. The hearing shall be conducted in accordance with the procedures set out in §§ 2.12 and 2.13. The purpose of the hearing be to determine if the parole grant should be rescinded or if a new parole date should be established.

indicated that such a right did exist in certain circumstances subject to the discretion of the correctional authorities. The individual must in all cases be advised of his limited right to counsel. If the individual requests counsel, and claims either 1) innocence of the alleged misconduct, or 2) the existence of substantial mitigating factors that are difficult to present, then the hearing officers have a presumptive duty to allow the participation of counsel. In addition, the authorities must consider the individual's ability to speak on his own behalf. *Gagnon v. Scarpelli, supra,* 411 U.S. at 790–91, 93 S.Ct. 1756.

During the December 16, 1977 "rescission hearing" held at the Federal Correctional Institution in Danbury, Connecticut, the petitioner's attorney requested that her client be accorded the due process rights of *Morrissey-Gagnon* as required by the District of Connecticut decisions in *Williams v. U. S. Board of Parole, supra; Metz v. Norton, supra;* and most recently in *Green v. Nelson,* 442 F.Supp. 1047 (D.Conn.1977). The hearing examiners indicated their familiarity with the constitutional rule articulated by that line of cases, yet they denied the petitioner's requests that he be afforded the mandated due process protections. One member of the panel caustically remarked: "This is the *United States* Parole Commission, not the Parole Commission of the District of Connecticut." Specifically, the petitioner's request that he be allowed to present witnesses on his behalf was denied. Although there is no indication in the record as to the identity of those witnesses whom the petitioner might have called in an attempt to rebut the findings of the prison officials, the petitioner has specified at least six witnesses, not including possible inmate witnesses, whom he intends to call if a new hearing is ordered.

In addition, the petitioner asserted his innocence of the charges that resulted in the forfeiture of statutory good-time, and detailed his version of a complex set of facts. The Institution Disciplinary Committee had concluded that the petitioner had used amphetamines while on furlough; a conclusion based upon the discovery of drug traces in a urine sample allegedly taken from the petitioner upon his return to prison. The petitioner argued before the Commission hearing officers that the positive urine sample was the result of either a laboratory error or the deliberate act of another made possible by the negligence of the staff in leaving the sample unsealed and unguarded for a few minutes in a location accessible to inmates returning from furlough or working nearby. Although these assertions were sufficient to invoke the right to counsel under *Gagnon,* the hearing examiners denied the petitioner's request for counsel's assistance during the proceeding.

As a result of the hearing, the petitioner was advised by a Notice of Action dated January 6, 1978 that he would have to remain in prison until his mandatory release date in June of 1978. The decision was based on the Commission's finding that the petitioner had used amphetamines while on furlough. The petitioner filed this petition for a writ of habeas corpus on December 22, 1977 challenging the validity of the Commission's decision because it was based on a constitutionally defective hearing.

## DISCUSSION

The Government argues that the interest a parole grantee has in an effective release date is of a lesser order than the interest of a parolee in continued liberty, and that procedural protections less rigorous than those mandated by *Morrissey-Gagnon* are therefore required in rescission hearings. In particular, the Government asserts that the due process protections provided to inmates in prison disciplinary proceedings under *Wolff v. McDonnell, supra,* are sufficient, and that the Parole Commission is therefore entitled to rely on the findings of the prison disciplinary committee when considering rescission of parole.

### A.

In evaluating the liberty interest to be protected, the Government claims that the *Morrissey-Gagnon* emphasis on the impact

of revocation upon the individual has now been replaced in recent Supreme Court opinions by an emphasis on statutory or regulatory entitlements. However, the Supreme Court recognized the continued validity of *Morrissey* in *Moody v. Daggett, supra,* 429 U.S. at 86–87, 97 S.Ct. 274. What the Government portrays as a new theory of due process is merely a further refinement of the traditional analysis. The examination of the statutory or regulatory prerequisites to administrative action does not make an analysis of the impact upon the individual unnecessary. Rather, the entitlement analysis merely highlights the requirement that the expectations of the individual, an important consideration in measuring the impact of withdrawing future liberty through rescission or revocation, must be justified in order to qualify for procedural protections.

Because this Court considers the analysis of the protectable interests in *Morrissey-Gagnon* still valid, the reasoning and result of this district's decisions in *Williams v. U. S. Board of Parole, supra,* and *Metz v. Norton, supra,* still appear correct. In those cases, the District Court carefully compared the impact of parole rescission upon the parole grantee with the impact of revocation upon the parolee, and found the effects to be equally grievous.[2] Because of the more recent Supreme Court decisions, however, this Court will examine whether the parole grantee's expectation of future liberty is as justified by the regulatory framework as that of the parolee.

Once the Parole Commission has given the inmate a parole date, two events may trigger the parole rescission process. *See* 28 C.F.R. § 2.34 (1977). First, the Commission will reconsider its decision to grant parole upon notification from the Bureau of Prisons that the parole grantee has been found guilty of prison misconduct. 28 C.F.R. § 2.34(a). This "good conduct" condition is closely analogous to the requirement that a parolee scrupulously observe the conditions of parole. *See* 28 C.F.R. § 2.40 (1977). Parole may also be rescinded upon the discovery of new information unrelated to prison misconduct. *See* 28 C.F.R. § 2.34(b) (1977). The receipt of such information, however, does not automatically trigger a rescission hearing. The Regional Commissioner must first decide whether the information is of sufficient import to warrant retarding parole. If he concludes that release should be retarded, he must seek the approval of members of the National Commission. Only when the Regional Commissioner and the National Commission members agree that parole should be retarded, will a parole rescission hearing be held. This provision allowing the Commission to rescind parole upon receipt of new information is augmented by 28 C.F.R. § 2.30 (1977), a regulation allowing the Regional Commissioner to initiate the § 2.34(b) procedures if he receives information that a prisoner "willfully concealed or misrepresented information deemed significant." This provision applies to *both* rescission and revocation.

■ These regulatory prerequisites for the rescission of parole thus are similar to, or the same as, the rules governing revoca-

---

**2.** The deprivation suffered by the parole grantee is analogous to that endured by the parolee in two respects. First, and most important, both individuals lose future liberty. Second, both individuals suffer dislocation. The model parolee has adjusted to his freedom through the reestablishment of social and familial contacts, and vocational responsibilities. Similarly, the parole grantee has been given the special privileges within the prison system that accompany his new status, and has often made arrangements for the post-release period. Indeed, one of the purposes of such privileges is to encourage the establishment of ties with family, community, and employer prior to release. In this case, for example, the petitioner had been awarded a $1,400 scholarship to study at a community college in Philadelphia, and had been in close contact with his family. Thus the dislocation caused by rescinding the petitioner's parole is clearly equivalent to the dislocation often involved in revocation. The Court suspects that the dislocation suffered by the petitioner in this case is probably greater than that suffered by many parolees. If these contacts with the world beyond the prison wall are worth encouraging, they are also worth protecting.

tion.[3] Parole may be rescinded only on the basis of new information. Because the conditions upon which parole may be rescinded are narrow, the regulatory structure ensures a significant degree of administrative finality. This finality justifies the parole grantee's expectation of future liberty. As a result, this Court sees no reason to value the interests of a parole grantee differently than those of a parolee in light of the Supreme Court's recent emphasis on legislative or regulatory entitlement.

### B.

The Court's investigation does not cease after determining that the parole grantee's interest in his pending release is analogous to the parolee's interest in continued freedom. As the Supreme Court noted, "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer, supra,* 408 U.S. at 481, 92 S.Ct. at 2600. In determining whether specific administrative procedures are sufficient, a court must consider the possibility of erroneous action, the contribution that might be made by further due process protections, and the Governmental interests involved. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Zurak v. Regan,* 550 F.2d 86, 93–96 (2d Cir. 1977). These factors were thoroughly examined in *Williams v. U. S. Board of Parole, supra,* and *Metz v. Norton, supra,* and the *Morrissey-Gagnon* protections were found necessary. However, one comment concerning the recent Supreme Court cases discussed by the Government appears warranted.

As expressed earlier, the Supreme Court's emphasis on the statutory or regulatory bases of individual interests deserving of procedural protection is part of the larger inquiry into the impact of the governmental action upon the individual. The entitlement approach also serves another purpose. By investigating the limits of administrative discretion, the Court discovers the factual predicates upon which the agency must base its decision, and thus whether the decision-making process would benefit from more rigorous fact-finding procedures. If the agency's discretion is limited to the exercise of professional judgment after making a finding as to specific facts, an adversarial hearing may be beneficial in determining those facts, particularly if they are readily tested. But if the agency's discretion is broad, a hearing will be less helpful because there may be virtually no limit to the relevant facts. Put another way, if the agency has no duty to respond in a particular manner to specific facts, an evidentiary hearing would be of little value to the advocate or the agency. For example, in the prison transfer cases cited by the Government, *Meachum v. Fano, supra,* and *Montanye v. Haymes, supra,* a hearing to allow the presentation of evidence concerning the inmate's good behavior and the significant benefits derived by him from his present location would have been largely futile because other considerations completely unrelated to the particular prisoner would have justified, and indeed might have required, his transfer to another institution.

The decision to rescind parole contrasts sharply with the decision to transfer a pris-

---

**3.** The Government also argues that 28 C.F.R. § 2.29(a) (1977) lends support to its argument. The regulation states that a "grant of parole shall not be deemed to be operative until a certificate of parole has been delivered to the prisoner." However, the delivery of a certificate is an automatic procedure halted only by a Commission decision to retard or rescind parole. The delivery of a certificate neither adds to nor subtracts from the Commission's discretion, therefore this provision plays no role in determining whether the parole grantee's expectation of liberty is justified. *But see Sexton v. Wise,* 494 F.2d 1176, 1178 (5th Cir. 1974).

The Government also directs this Court's attention to 28 C.F.R. § 2.54 (1977), a provision which authorizes the Attorney General or three members of the Commission to request further administrative review of the decision of a Regional Commissioner. These initiatives, however, do not start the rescission process, but merely prolong the administrative procedures already begun by receipt of new information. Furthermore, these extraordinary procedures are seldom invoked, and apply equally to the initial parole grant, to rescission, and to revocation.

oner. The criteria for rescission are clear, and certain factual determinations must precede the exercise of discretion by the Commission in deciding to rescind. A convincing rebuttal of the new information will lead to only one result: parole as originally planned. Most important, because these facts are within the prisoner's direct knowledge, he may be able to contribute significantly to the fact-finding process. Thus an investigation of the regulatory framework surrounding parole rescission merely reveals the pivotal importance of the rescission hearing, and the benefits that may be derived from the prisoner's full participation. This full role is possible only if the inmate is allowed to present witnesses, confront and cross-examine adverse witnesses, and benefit from the advice and advocacy of his attorney.

In summary, this Court reiterates the rule of *Williams v. U. S. Parole Board, supra,* and *Metz v. Norton, supra,* and holds that the due process protections of *Morrissey-Gagnon* apply to parole rescission hearings. The Supreme Court's emphasis on statutory or regulatory entitlement does not represent a new methodology of due process mandating a different outcome. Rather, close examination of the positive law basis for a due process claim merely highlights two principles of the traditional analysis: the individual's expectation of future liberty must be justified, and the ability of the agency to fulfill its legal function must benefit from the individual's participation in the fact-finding process.

Accordingly, it is hereby ORDERED, that the United States Parole Commission hold a new rescission hearing on or before February 8, 1978 at which the petitioner may exercise the same rights enjoyed by parolees under *Morrissey-Gagnon,* including the right to present witnesses, to confront and cross-examine adverse witnesses, and to be fully represented by counsel. In the event that a proper hearing is not held by that date, the petitioner shall be released on February 14, 1978 under the conditions specified in the Commission's original parole grant for that date.