Theodore **GREEN** and Daniel Porter, on behalf of themselves and all Federal prisoners incarcerated within the District of Connecticut, Plaintiffs-Appellees,

v.

Cecil **McCALL,** individually and in his official capacity as Chairman, United States Parole Commission, Benjamin J. Malcolm, George J. Reed, Dorothy Parker, Joseph A. Nardoza, J. Robert Cooper, Robert Vincent, William E. Amos, and Audrey A. Kaslow, Members of the United States Parole Commission, individually and in their capacity as Members of the United States Parole Commission, and the United States Parole Commission, Defendants-Appellants.

No. 861, Docket 82–2255.

United States Court of Appeals, Second Circuit.

Argued Feb. 2, 1983.

Decided June 7, 1983.

Lawrence P. Fletcher, Student Counsel, Yale Law School, New Haven, Conn. (John L. Pottenger, Jr., Stephen Wizner, Mary A. McCarthy, P.J. Pittman, Yale Law School, Jerome N. Frank Legal Services Organization, New Haven, Conn., on brief), for plaintiffs-appellees.

Beneva Weintraub, Dept. of Justice, Washington, D.C. (Alan H. Nevas, U.S. Atty., D. Conn., Barry K. Stevens, Asst. U.S. Atty., New Haven, Conn., on brief), for defendants-appellants.

Before FEINBERG, Chief Judge, LUMBARD and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

The individual defendants in this action, who were members of the United States Parole Commission ("Commission") when the action was commenced and are hereinafter referred to as the "Commissioners," appeal pursuant to 28 U.S.C. § 1292(b) (1976) from an interlocutory order of the United States District Court for the District of Connecticut, T.F. Gilroy Daly, then *Judge,* now *Chief Judge,* ruling that the court has personal jurisdiction over the Commissioners in their individual capacities pursuant to Connecticut's long-arm statute, Conn.Gen.Stat. § 52–59b(a)(2) (1973).[1] The Commissioners contend that § 52–59b(a)(2) conferred jurisdiction over them only in their official capacities. We agree and, accordingly, vacate the order and remand to the district court for consideration of other possible bases for jurisdiction.

## BACKGROUND

The present action concerns the procedures followed by the Commission's hearing examiners in conducting disciplinary hearings at the Federal Correctional Institution at Danbury, Connecticut ("FCI Danbury"), with respect to inmates who had been granted parole but had not yet been released. In a series of six or more lawsuits between 1974 and 1978, the district court in Connecticut ruled that proceedings in which the Commission had determined whether to rescind a grant of parole had not been conducted in accordance with fundamental notions of due process, and ruled that the grantee should be allowed, for example, to have prior notice of the charges against him, to call witnesses, to confront and cross-examine his accusers, and to have the assistance of counsel.[2] The Commission

1. George J. Reed, named as a defendant in the caption, had retired from the Commission at the time service of the complaint was first attempted and apparently has not appeared in the action, although he was not expressly excluded from those in whose behalf this appeal was undertaken. We note also that since this action was commenced, several other defend-

ants have also retired and are no longer members of the Commission.

2. *See Williams v. United States Board of Parole,* 383 F.Supp. 402, 405 (D.Conn.1974); *Green v. Nelson,* 442 F.Supp. 1047, 1058–59 (D.Conn.1977), and cases cited therein; *Drayton v. McCall,* 445 F.Supp. 305, 311 (D.Conn.),

nevertheless persisted in following its discredited procedures, and did not appeal until *Drayton v. McCall,* 445 F.Supp. 305 (D.Conn.1978), in which this Court described the procedures as "fatally deficient." 584 F.2d 1208, 1221 (2d Cir.1978).

This action was commenced in 1978 by plaintiffs Theodore Green and Daniel Porter, who were then inmates at FCI Danbury and whose parole grants had been rescinded by the Commission, allegedly pursuant to its judicially disapproved procedures, resulting in delays in the releases of Green and Porter of 68 days and 372 days, respectively. The complaint, filed as a class action, seeks (1) a writ of mandamus compelling the Commission and the Commissioners to cease violating the constitutional rights of the plaintiffs and others similarly situated, and to take certain affirmative steps to protect those rights, (2) a declaratory judgment that regulations followed by the Commission, to wit, 28 C.F.R. § 2.34, 42 Fed. Reg. 39,817 (1977), are unconstitutional, and (3) compensatory and punitive damages from the Commissioners in their individual capacities, in accordance with *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Process was served on the Commissioners by certified mail at their offices in Washington, D.C., apparently pursuant to 28 U.S.C. § 1391(e) (1976).[3] None of the Commissioners maintained a personal or official residence in Connecticut, and there is no indication that they entered Connecticut to perform any of their duties.

In answering the complaint in 1978, the Commissioners asserted, *inter alia,* that the court lacked jurisdiction over them except in their official capacities. In 1981, they moved for a preliminary determination of their defenses of lack of personal jurisdiction and improper venue as to the claims against them in their individual capacities. Relying on *Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980), the Commissioners contended that § 1391(e) allows nationwide service of process and expanded venue only with respect to claims against federal officials in their official capacities, and not with respect to damages claims against them in their individual capacities. In response to this motion, plaintiffs moved for, and were granted, permission to serve process on the Commissioners pursuant to the Connecticut long-arm statute,[4] Conn. Gen.Stat. § 52–59b.[5]

rev'd, 584 F.2d 1208 (2d Cir.1978). In *Drayton v. McCall,* this Court rejected the Commission's argument that a parole grantee is not entitled to any due process procedural protection prior to rescission of a grant of parole, and we concluded that the procedures followed had denied Drayton due process. We reversed the district court's outright grant of parole, however, because we rejected the court's view that due process in rescission hearings required the entire panoply of safeguards set forth in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and we remanded for entry of a conditional order, granting parole to Drayton in the event the Commission persisted in its refusal to follow the procedures we identified as required.

**3.** 28 U.S.C. § 1391(e) provides:

(e) A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in

which (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.

**4.** Plaintiffs did not concede the correctness of the Commissioners' interpretation of *Stafford v. Briggs,* and on this appeal they contend that since § 1391(e) provides jurisdiction over an official in his official capacity, it provides pendent jurisdiction over him in his individual capacity. We find this argument meritless. In

**5.** See note 5 on page 32.

The Commissioners' jurisdictional motion was referred to Magistrate Thomas P. Smith, who recommended that the motion be denied on the ground that the district court had jurisdiction over the defendants in their individual capacities under Conn. Gen.Stat. § 52–59b(a)(2). That section provides for jurisdiction over a nonresident who commits a tortious act within the state through an agent. In reaching this conclusion the magistrate viewed the hearing examiners who conducted the parole rescission hearings at FCI Danbury as the agents of the Commissioners for purposes of the long-arm provision:

> Title 28, U.S.C. § 4203 indicates that hearing examiners are subordinates who act with the Commissioners' knowledge and consent, and for their benefit. Without the former, the latter would simply be unable to discharge their statutory duties. Examiners, moreover, do not appear to possess rulemaking authority, but must follow instructions given by the Commissioners, who alone are empowered to render decisions.
>
> There is direct evidence in this case that the hearing examiners at FCI Danbury were aware of this and, therefore, despite knowledge of case law by federal courts in this district, instead followed contrary instructions given by the defendants.... In doing so, it hardly can be said they were acting in behalf of the government and that "[o]nly the United

States government acting in the *public interest* stood to benefit." *Compare Marsh v. Kitchen,* 480 F.2d 1270, 1273 (2d Cir.1973) (Emphasis Added).

Magistrate's Ruling dated Jan. 4, 1982 ("Magistrate's Ruling"), at 19–20.

Over the Commissioners' objections, the district court adopted the magistrate's recommendation. The court certified the question of the applicability of § 52–59b(a)(2) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## DISCUSSION

Subsection (2) of Conn.Gen.Stat. § 52–59b(a), which is set out in full in note 5 *supra,* provides, in pertinent part, that a court may exercise personal jurisdiction over any nonresident individual ... who ... through an agent ... (2) commits a tortious act within the state....

The question before us is whether the applicability of this provision to a claim against a government official in his individual capacity depends upon the agent's having represented the defendant in his individual capacity rather than his official capacity. We hold that it does so depend and that in the present case that requirement has not been met.

Although this question apparently has not previously been decided by the courts of Connecticut, we are aided by the fact that the Connecticut long-arm statute was patterned after N.Y.Civ.Prac.Law ("CPLR")

*Driver v. Helms,* 577 F.2d 147 (1st Cir.1978), as here, the plaintiffs sought declaratory and injunctive relief against the defendants in their official capacities as well as money damages against them in their individual capacities. The court of appeals' decision upholding jurisdiction of the latter claims under § 1391(e) was reversed by the Supreme Court in *Stafford v. Briggs.*

5. Section 52–59b(a) provides as follows:
Jurisdiction of courts over nonresidents and foreign partnerships. Service of process. (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, or foreign partnership, or his or its executor or administrator, who in person or through an agent: (1)

Transacts any business within the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from such act; or (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from such act, if he (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state.

§ 302(a) (McKinney 1972).[6] *See Bross Utilities Service Corp. v. Aboubshait,* 489 F.Supp. 1366, 1374 n. 39 (D.Conn.), *aff'd mem.,* 646 F.2d 559 (2d Cir.1980); *Gandolfo v. Alford,* 31 Conn.Supp. 417, 333 A.2d 65 (Super.Ct.1975). Thus, "New York decisions are especially useful and relevant in construing General Statutes § 52–59b ...." *Id.,* 333 A.2d at 69.

CPLR § 302(a)(2) provides, in pertinent part, that

> a court may exercise personal jurisdiction over any nondomiciliary ... who ... through an agent ... 2. commits a tortious act within the state ....

Under New York law it is established that this subsection does not provide jurisdiction over a defendant in his individual capacity based on an agent's tortious act within the state unless the agent was representing the defendant in his individual capacity. *See, e.g., Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122–23 (2d Cir.1981), discussed in greater detail below; *Unicon Management Corp. v. Koppers Co.,* 250 F.Supp. 850, 853 (S.D. N.Y.) (no jurisdiction over individual defendants since agents acted as agents of corporation rather than of defendant corporate employees), *aff'd on other grounds,* 366 F.2d 199 (2d Cir.1966); *Mandaglio v. United Brotherhood of Carpenters,* 528 F.Supp. 468, 471 (E.D.N.Y.1981) (to same effect in dismissing claim against union official in his individual capacity).

In *Grove Press, Inc. v. Angleton, supra,* the plaintiffs sued the Central Intelligence Agency ("CIA") and eight former CIA officials, complaining of surveillance in violation of their constitutional rights and seeking injunctive and declaratory relief, a writ of mandamus against the CIA, and money damages from the individual defendants. See *Grove Press, Inc. v. CIA,* 608 F.2d 926, 927 (2d Cir.1979), in which, in an earlier appeal in the same case, we reversed an order sustaining jurisdiction over individual defendants under § 1391(e) and remanded for consideration of applicability of the New York long-arm statute. On remand the·district court upheld jurisdiction on the basis of CPLR § 302(a)(2) on the ground that CIA personnel in New York had acted as agents of the defendant CIA officials. We reversed because the district court had "found nothing to suggest that these appellants expected to benefit as individuals from the wrongdoing alleged in the complaint." 649 F.2d at 122–23. We noted that

> [s]o far as the record discloses, these individuals ... were simply United States employees acting as agents for the United States government. More than this was required to make a prima facie showing that they were appellants' personal agents.

*Id.* at 123. *Accord Marsh v. Kitchen,* 480 F.2d 1270, 1273 (2d Cir.1973) (in executing warrant for plaintiff's arrest, Secret Service agents located in New York and acting on instructions of appellees, who were a Missouri Secret Service agent and an Assistant United States Attorney for the Western District of Missouri, were not acting as their agents: "[a]ppellees did not stand to benefit from the arrest of Marsh").

In accordance with these constructions of CPLR § 302(a)(2), we interpret Conn.Gen. Stat. § 52–59b(a)(2) similarly as not providing jurisdiction over defendants in their individual capacities on the basis of tortious acts of agents within Connecticut unless the agents represented the defendants in their individual, as contrasted with their official, capacities.

▮ In the present case, plaintiffs have failed to make a prima facie showing, *see, e.g., Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981), that the

---

**6.** The relevant portion of CPLR § 302(a)(2), set forth below, is virtually identical to Connecticut's § 52–59b(a)(2):

> (a) .... As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor

or administrator, who in person or through an agent:

> ....

> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; ....

Commission's hearing examiners at FCI Danbury represented the Commissioners as individuals. In suggesting that plaintiffs had met their burden of establishing jurisdiction, the magistrate relied on 18 U.S.C. § 4203 (1976), which permitted the Commissioners (1) to delegate to hearing examiners the power to conduct hearings and make parole rescission recommendations, *id.* § 4203(c)(2), and (2) to promulgate the regulations under which the hearing examiners conducted the rescission hearings and allegedly deprived plaintiffs of procedural due process, *see id.* § 4203(a)(1). The magistrate concluded that absent this authority to delegate, the Commissioners "would simply [have been] unable to discharge their statutory duties." Magistrate's Ruling at 19. We agree with this assessment of the Commissioners' operational needs, but the suggestion that these requirements implicate the Commissioners as individuals does not logically follow. Although the Commissioners benefited from the hearing officers' actions, there is no basis for inferring that they benefited, or sought to benefit, in their individual capacities rather than their official capacities.

■ Nor do we find pertinent either the magistrate's observation that the interest of the government does not benefit from the performance of acts that are unconstitutional, or the plaintiffs' emphasis on the importance of *Bivens*-type actions as a means of vindicating constitutional rights. We agree that it is not in the interest of the government or the public to have their goals pursued in an unconstitutional manner; but this does not mean either that in proceeding in such a manner an official is pursuing his own individual interests, *see Grove Press, Inc. v. Angleton, supra,* or that the existence of in personam jurisdiction can be inferred simply from the potential for personal liability.

Accordingly, we vacate the order of the district court upholding jurisdiction on the basis of § 52–59b(a)(2) and remand for consideration of other possible bases of jurisdiction.