Theodore **GREEN** and Daniel Porter, on behalf of themselves and all Federal prisoners incarcerated in the District of Connecticut, Plaintiffs,

v.

Cecil **McCALL**, in his capacity as Chairman, United States Parole Commission, and Benjamin J. Malcolm, George Reed, Dorothy Parker, Joseph Nardoza, J. Robert Cooper, Robert Vincent, William E. Amos, Audrey A. Kaslow, Members of the United States Parole Commission in their capacities as Members of the United States Parole Commission, and the United States Parole Commission, Defendants.

No. N–78–23 (TFGD).

United States District Court, D. Connecticut.

March 5, 1986.

Ruling On Motion To Alter And Amend Judgment And Joint Proposal To Amend

Permanent Injunction May 23, 1986.

John L. Pottenger, Jr., Judith Resnick, Miriam Berkman, Stephen Wizner, Jerome N. Frank Legal Services Organization Yale Law School, New Haven, Conn., for plaintiffs.

Beneva Brown Weintraub, Dept. of Justice, Gen. Litigation and Legal Advice, Washington, D.C., Stanley A. Twardy, U.S. Dist. Atty., Barry K. Stevens, Asst. U.S. Atty., Bridgeport, Conn., for defendants.

## MEMORANDUM OF DECISION

DALY, Chief Judge.

This class action was brought on behalf of all federal prisoners incarcerated within the District of Connecticut against the present and former members of the United States Parole Commission ("USPC"). On February 9, 1978, the Court issued a preliminary injunction prohibiting the USPC from rescinding the parole grant of any member of the plaintiff class during the pendency of this litigation, without first affording the inmates the procedural safeguards required by law in this District.

On March 12, 1981, this case was consolidated with *Drayton v. McCall* for pre-trial purposes only. In *Drayton,* the Court had ordered that the USPC hold a new rescission hearing on or before February 8, 1978 or the petitioner was to be released. The Court held that procedures mandated in parole revocation hearings applied to parole rescission hearings. *Drayton v. McCall,* 445 F.Supp. 305 (D. Conn.1978). On appeal, the Court of Appeals for the Second Circuit remanded the case holding that not all procedures mandated in parole and probation revocation hearings must be complied with in parole rescissions. However, the Court of Appeals also set forth the procedural due process rights to which federal prisoners whose dates of parole have been approved but who have not yet

been released are entitled. *Drayton,* 584 F.2d 1208 (2d Cir.1978). On May 19, 1981, the Court granted a motion for voluntary dismissal of the *Drayton* action. The Second Circuit's holding in *Drayton,* however, which sets forth the procedural due process rights guaranteed to the members of the plaintiff class, remains the law of the Circuit.

On March 22, 1982, the Court issued an interlocutory order finding personal jurisdiction over the Commissioners in their individual capacities pursuant to Connecticut's long-arm statute, Conn.Gen.Stat. § 52–59b(a)(2)(1973). On appeal of the jurisdictional issue, the Court of Appeals for the Second Circuit vacated the Court's order and found that there was no jurisdiction over the Commissioners in their individual capacities. *Green v. McCall,* 710 F.2d 29 (1983).

Upon review of all of the evidence, the Court enters the following findings of fact and conclusions of law and determines that the preliminary injunction shall be made permanent.

FINDINGS OF FACT

1. The United States Parole Commission conducts inmate parole rescission hearings at the Federal Correctional Institution ("F.C.I.") and the Federal Prison Camp ("F.P.C.") in Danbury, Connecticut.

2. At the time this action was instituted in January of 1978, the USPC conducted parole rescission hearings pursuant to the procedures set forth at 28 C.F.R. § 2.34 (1977). The Court found that those procedures did not comply with the requirements in the District of Connecticut. Defendants' Amended Proposed Conclusions [sic] of Fact ("Def. Facts") No. 2.

3. On February 9, 1978, the Court issued a preliminary injunction enjoining the USPC from rescinding the parole grants of any of the members of the plaintiff class without first affording them the procedural requirements set forth in *Williams v. U.S. Board of Parole,* 383 F.Supp. 402 (D. Conn. 1974), *Green v. Nelson,* 442 F.Supp. 1047 (D. Conn.1977), and *Drayton v. McCall,* 445 F.Supp. 305 (D. Conn.1978).

4. The USPC reopens inmates' parole cases for possible rescission upon notification of an inmates misconduct from the Federal Bureau of Prisons ("BOP").

5. The USPC notifies inmates of a parole rescission hearing only if their case has been reopened.

6. The USPC mails the Notice of Action informing an inmate of a prospective parole rescission hearing to the prison at which the inmate was incarcerated immediately prior to or at the time of his misconduct. Testimony of Henry Sadowski, Regional Counsel, USPC; testimony of George Peterson.

7. The BOP does not forward inmate progress reports to the USPC prior to statutory interim hearings or pre-release reviews. USPC hearing examiners first learn of an inmate's misconduct at the time of these reviews, and may then decide to convert a pre-release review into a rescission hearing. Testimony of Henry Sadowski.

8. USPC regulations require that an inmate scheduled for an interim hearing or pre-release review be provided with a progress report containing notice of possible rescission of his parole date at least thirty days prior to the hearing or review. USPC Procedures Manual, § 2.34–02(a) (October 1, 1984).

9. The evidence at trial showed that the BOP does not always provide inmates with their progress reports, and the USPC does not generally ensure that inmates have seen their progress reports at least thirty days prior to their hearing or review. Testimony of Roland Bynum.

10. The notice required to be attached to progress reports by USPC regulations does not adequately advise inmates of their full procedural rights as set forth in the Court's preliminary injunction. Plaintiffs' Exhibit ("Pl. Ex.") # 10(a).

11. In order for BOP staff to schedule an initial parole hearing, an inmate must sign USPC form I–24 "Notice of Hearing-Parole

Application, Representative and Disclosure Request."

12. Form I–24, Notice of Hearing, does not mention the additional procedural rights required at parole rescission hearings, specifically, waiver # 3, "Representative", does not inform an inmate of his right to a court-appointed attorney, and waivers 1, 2 and 4 do not mention an inmate's rights to call voluntary witnesses or to confront and cross-examine certain adverse witnesses. Pl. Ex # 3.

13. Inmates who wish to proceed without counsel or witnesses may do so by signing and initialling Form I–16, "Attorney—Witness Election Form." Form I–16 does not adequately state the procedural rights available to inmates and the evidence at trial established that USPC hearing examiners do not always sufficiently inform the inmates of these rights. Defendants' Exhibit ("Def. Ex.") # 508.

14. An alternative to waiver for some inmates is a continuation of the rescission proceedings to another docket, scheduled for at least two months later.

15. Pre-release reviews are generally conducted at least two months before presumptive parole dates.

16. Instances of administrative misconduct may be sanctioned by a limited retardation under 28 C.F.R. § 2.14(b)(2)(iii) and 28 C.F.R. § 2.34(b). Defendant's Response to Plaintiff's Proposed Findings of Fact and Conclusions of Law, No. 28. The penalty prescribed by the parole rescission guidelines for most administrative misconduct is 0–60 days per instance of misconduct. Therefore, a postponement of a hearing by two months may result in a longer period of incarceration than simple admission of misconduct. Testimony of Henry Sadowski; Pl. Ex. # 60.

17. The testimony established that the USPC did not always conduct parole rescission hearings prior to an inmate's transfer away from the institution where his misconduct occurred. This creates difficulty for an inmate who attempts to call witnesses on his own behalf. Testimony of Raymond Evans.

18. Court-appointed attorneys did not, as a matter of course, receive documents from the USPC pertaining to an inmate scheduled for a parole rescission hearing. Testimony of Richard Reeve, Assistant Federal Public Defender.

19. The BOP controls access of attorneys and inmates to the parole hearing rooms at F.C.I. Danbury.

20. The USPC has, on occasion, proceeded without an inmate's attorney even when USPC hearing examiners were aware that the inmate had arranged to have an attorney represent him.

21. The testimony established that the USPC has on occasion denied an inmate, or allowed an inmate to be denied, access to investigative reports, voluntary witnesses or adverse witnesses without making findings that institutional security had been threatened. Testimony of Raymond Evans; testimony of Joseph Holmes.

22. Between February, 1983 and February, 1985, forty-four parole rescission hearings were conducted at F.C.I. or F.P.C. Danbury. The USPC did not send the required notice ("*Green* letters") to twenty-one of those inmates. Testimony of Henry Sadowski.

23. Nine of the inmates who had parole rescission hearings at F.C.I. or F.P.C. Danbury between February, 1983 and February, 1985 had their cases reopened outside the District of Connecticut. None of these nine inmates was sent the required *Green* letter. Testimony of Henry Sadowski.

24. Seven of the inmates who had parole rescission hearings at F.C.I. or F.P.C. Danbury between February, 1983 and February, 1985 were scheduled for statutory interim hearings. None of these seven inmates was sent any notice of the special procedural rights available at parole rescission hearings. Testimony of Henry Sadowski.

25. From the sample provided in discovery of sixty parole rescission hearings conducted between February, 1983 and February,

1985 at various federal institutions, twenty-five were conducted more than six months after the misconduct for which parole was rescinded had occurred, and in the case of escapes, more than six months after the inmates' return to federal custody. Testimony of Jaqueline Frankfurt, Yale Law School; Pl. Ex. # 29.

26. The USPC has on occasion failed to inform inmates of their right to have an attorney appointed without charge and the evidence shows that inmates would have used this service had they known it was available. Testimony of Roland Bynum.

27. In conclusion, these facts indicate that the USPC has not always fully complied with the preliminary injunction previously entered by the Court. As set forth in the conclusions of law, this finding necessitates the entry of a permanent injunction in order to protect the plaintiff class from further violations by the USPC.

## CONCLUSIONS OF LAW

### I. Mootness

This Court's Order of February 9, 1979 certifying a class action and imposing a preliminary injunction requires the USPC to conduct parole rescission hearings at F.C.I. or F.P.C. Danbury in accordance with the law of this District as established in *Williams v. U.S. Board of Parole*, 383 F.Supp. 402 (D. Conn.1974), *Green v. Nelson*, 442 F.Supp. 1047 (D. Conn.1977) and *Drayton v. McCall*, 445 F.Supp. 305 (D. Conn.1978), *rev'd*, 584 F.2d 1208 (2d Cir. 1978). The USPC asserts that because it has complied with this Order the plaintiff's claim should be dismissed as moot. However, based upon the preceeding Findings of Fact, the Court holds that the USPC has not complied with its Order and thus the plaintiff's claim should not be dismissed as moot.

Although the USPC has changed its written policies regarding parole rescission hearings, the plaintiffs have established that many of these policies are not always implemented in practice by the hearing examiners. Not all of the inmates have received the mandatory *Green* letters inform-ing them of their procedural rights, and some of the inmates that have received *Green* letters did not obtain them until after their hearings had begun.

The USPC claims that although the general rule is that voluntary cessation of alleged illegal conduct does not alone deprive a court of the power to hear and determine a case, *United States v. W.T. Grant Company*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1982), the case must be dismissed as moot when there is no reasonable likelihood that the alleged wrong will recur. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1978). Defendants' Amended Proposed Conclusions of Law, No. I.1 ("Def. Law").

However, the *Davis* test of mootness is actually composed of two parts, both of which must be satisfied in order for an issue to be considered moot. First, it must be said "with assurance that there is no reasonable expectation" that the alleged violation will recur, *and* it must be established that interim relief or events have "*completely* and *irrevocably* eradicated the effect of the alleged violation." *Id.* at 631, 99 S.Ct. at 1383 (emphasis added). While the USPC has cited the changes in its *Rules and Procedures Manual* as evidence of the fact that interim relief has been provided, the testimony of various inmates has shown that this relief is not adequate and does not eliminate the reasonable expectation that further violations may occur. The USPC is free to return to and has returned to its prior practices, precluding a finding of mootness. *See Grant*, 345 U.S. at 632, 73 S.Ct. at 897.

The burden upon the USPC of establishing that there is "no reasonable expectation that the wrong will be repeated" is a heavy one. *Grant*, 345 U.S. at 633, 73 S.Ct. at 897. Given that the USPC has continued to violate the Order of this Court which sets forth the preliminary injunction, in spite of the *Drayton* decision and the corresponding changes in the *USPC Rules and Procedures Manual*, there is certainly a reasonable expectation that the wrongs will be repeated. The Court therefore declines to

vacate the preliminary injunction presently in force on mootness grounds.

## II. Likelihood of Future Injury

The USPC argues that because it modified its *Rules and Procedures*, Appendix 8C (October 1, 1984) to conform with the *Drayton* decision, the inmates cannot claim a substantial likelihood of present danger. Plaintiffs have established, however, that these new regulations and the USPC's method of implementing them are inadequate to ensure that inmates receive notice of their procedural rights, much less guarantee that the rights are provided at the hearings.

The USPC states that the "sole function of an injunction is to prevent future violations. Allegations of past transgressions are only relevant when they provide insight into present violations that are likely to recur." Def. Law, No. I.4. The alleged past violations occurred while the preliminary injunction prohibiting them was in effect. This is relevant to the Court's inquiry regarding future actions should the injunction be vacated. While the preliminary injunction has helped to mitigate the wrongdoings of the USPC, a permanent injunction is necessary to ensure the protection of inmates' procedural rights. Since the USPC has not complied with the dictates of the preliminary injunction, the Court fails to see how the procedural rights of inmates could be guaranteed if the injunction were vacated.

The USPC concedes that five of the seven inmate class members who testified at trial (Roland Bynum, George Peterson, Morris Speight, Joseph Holmes and Mark Corbett) were first informed of their procedural rights set forth in this Court's Order *at* their rescission hearings. Def. Facts No. 15. This occurred despite the fact that the USPC was under an order from this Court to mail a *Green* letter to all inmates scheduled for rescission hearings at F.C.I. Danbury. Although the *Green* letters were supposed to be mailed before these hearings, the letters often arrived on the eve of (or even after) the hearings. Testi-

mony of Henry Sadowski. The USPC also admits that despite this Court's Order, it never even sent *Green* letters to five of the seven testifying inmates (Raymond Evans, Roland Bynum, George Peterson, Joseph Holmes and Mark Corbett). Def. Facts Nos. 13, 16.

The Court need not recite in detail the harm that can befall an inmate who has not received adequate notice of his rescission hearing or his rights at that hearing. *See* Testimony of Richard Reeve. Inmates who are effectively denied attorney representation because they are not informed that they are entitled to attorneys may remain unaware of the importance of exercising their other rights. For example, inmate Raymond Evans, unaware of the potential consequences of his rescission hearing, did not arrange to obtain a written statement from a witness who had been transferred and was unable to appear. Mr. Evans appeared without his witness to refute the charges against him, lost his parole date and was denied release on parole. Testimony of Raymond Evans. Mr. Evans was one of the inmates for whom the USPC's Regional Counsel could "give no reason why" the *Green* letter was never mailed. Testimony of Henry Sadowski.

The USPC's primary evidence in support of its alleged compliance with this Court's Order and the *Drayton* decision is the codification of USPC rules after *Drayton* was decided. *Rules and Procedures Manual*, Appendix 8C (October 1, 1984). Plaintiff's evidence, on the other hand, demonstrates that in spite of the new rules, the USPC continues to conduct rescission hearings in violation of the preliminary injunction entered by the Court in 1978. The new regulations, considered in context with their methods of implementation, are insufficient to ensure future compliance with this Court's Order and the *Drayton* decision. The USPC has not attempted to show that absent an injunction in force against them they will provide the inmates with the procedural rights to which they are entitled. Plaintiffs have proven "a genuine claim of an injury or possible inju-

ry of sufficient immediacy and reality to warrant the issuance of a declaratory judgment or a permanent injunction." *Armstrong v. Ward*, 529 F.2d 1132 (2d Cir. 1976). "The continuing failure of the USPC to fully comply with this Court's Order is an adequate basis for finding a substantial likelihood of future injury and for the issuance of a permanent injunction in an effort to prevent that harm. Therefore, the preliminary injunction previously entered shall become permanent.[1] The permanent injunction set forth in the Appendix shall issue forthwith."

It is SO ORDERED.

## RULING ON MOTION TO ALTER AND AMEND JUDGMENT AND JOINT PROPOSAL TO AMEND PERMANENT INJUNCTION

Having reviewed defendants' motion to alter and amend judgment, plaintiffs' response thereto and the "Joint Proposal To Amend Permanent Injunction Pursuant to Order of April 16, 1986" filed May 12, 1986, the Court herewith enters the following Substitute Appendix to the Memorandum of Decision entered March 5, 1986. The motion and joint proposal are granted and adopted to the extent indicated below. This substitute appendix sets forth the terms of the permanent injunction in the above-captioned action.

### APPENDIX

In accordance with the foregoing opinion, the following constitutes the permanent injunction which shall issue forthwith. The USPC is hereby Ordered to comply with the following provisions:

A. NOTICE

i. The USPC must arrange to be informed by the BOP of the arrival at F.C.I. or F.P.C. Danbury of any inmate whose parole case has been reopened for a rescission hearing.

ii. The USPC must arrange to receive from the BOP the IDC reports for any misconduct occurring since the last parole hearing of any inmate scheduled for an interim hearing or pre-release review at F.C.I. or F.P.C. Danbury within a reasonable period but not less than 25 days before the hearing or review.

iii. Upon notification of an inmate's arrival or upon reopening a case for parole rescission after receipt of an inmate's IDC reports, the USPC must send a Notice of Action scheduling a parole rescission hearing to that inmate at F.C.I. or F.P.C. Danbury.

iv. The Notice of Action must include the charges against the inmate.

v. Form CJA 22 must be attached to the Notice of Action.

vi. The Notice of Action scheduling rescission must contain the following statement of procedural rights:

### PROCEDURAL RIGHTS AT PAROLE RESCISSION HEARINGS

At a parole rescission hearing, the United States Parole Commission may take away your current parole date. Your parole date may be delayed or you may be completely denied parole.

At parole rescission hearings conducted at F.C.I. or F.P.C. Danbury, you have the following procedural rights:

1. *Attorney*—You may be represented at your rescission hearing by an attorney.

2. *Free Attorney*—If you are unable to afford an attorney, you may be represented at your rescission hearing by a free, court-appointed attorney. To qualify, you must complete the attached form CJA 22.

3. *Notice*—You must be told in advance of the charges to be considered at your

---

**1.** The complaint filed on January 18, 1978 requested monetary relief, in addition to injunctive relief, on behalf of all members of the plaintiff class. The Court notes that no evidence was presented at trial to establish any actual damages claimed by any members of the plaintiff class. Further, the proposed findings of fact and conclusions of law filed by both parties fail to address this issue entirely. The Court therefore finds that the plaintiffs' request for monetary relief should be denied.

rescission hearing. They are listed on the attached Notice of Action.

4. *Witnesses*—You may call witnesses in your support at your rescission hearing and may also question persons who have given evidence against you on these charges. Witnesses you ask for will be present unless good cause is found for their nonappearance. If witnesses are unable to appear you may request that they provide written statements for your hearing.

5. *Documents*—You may ask your case manager to allow you access to all disclosable documents pertaining to the charges against you.

vii. A receipt must be attached to the Notice of Actions scheduling rescission hearings. This receipt must contain the statement of procedural rights listed above. Copies of the Notice of Action and the signed and dated receipt must be provided to the inmate, the BOP and the USPC.

viii. No parole rescission hearing is to be held for any inmate at F.C.I. or F.P.C. Danbury unless the inmate has received his Notice of Action at least 15 days prior to his hearing as indicated by a signed and dated receipt.

B. ATTORNEYS

i. If an inmate indicates on the receipt for his Notice of Action that he desires an attorney or returns the Form CJA 22 and establishes that he qualifies for a court-appointed attorney, the USPC must forward said documents to the Clerk of this Court within a reasonable time.

ii. If the inmate has indicated in the receipt his permission, all documents in the inmate's file pertaining to his misconduct, specifically including the IDC reports and any documents which the IDC cites as a basis for its findings, must be forwarded to the Clerk of the Court along with the request forms, except as specified in ¶ C, below.

iii. The USPC must inform an attorney within a reasonable time of the date and time of a hearing at which parole rescission may occur.

iv. The USPC may not conduct parole hearings prior to the scheduled times unless:

(a) where an inmate has requested representation by counsel, both inmate and counsel agree to the shift in hearing time, or

(b) where an inmate has not requested representation by counsel, the inmate consents to the shift in hearing time. Where counsel has been requested, USPC hearing examiners must be instructed not to proceed with hearings without first ascertaining that the attorney is not present at F.C.I. or F.P.C. Danbury.

C. DOCUMENTS

i. The USPC must provide the inmate and his attorney with all documents pertaining to the charges to be considered at the rescission hearing.

ii. The USPC may refuse to disclose documents if it makes an explicit finding that disclosure would jeopardize institutional security or would endanger any person. The USPC must advise the inmate and his attorney of its finding, inform them of the reasons for that finding or the theory why such reasons may not be revealed and provide them with a disclosable summary of any withheld document.

D. WITNESSES

i. If an inmate has requested to call witnesses or to cross-examine adverse witnesses, the USPC must ensure the presence of these witnesses at the rescission proceedings, except for good cause shown.

ii. If a requested witness is unable to appear, the USPC shall advise the inmate and his attorney of the reason for nonappearance. When appearance of a witness is denied, the USPC shall request a written statement from such witness and shall provide that statement unless the USPC makes an explicit finding that disclosure of the statement would threaten institutional security or would endanger any person.

E. HEARING

i. The USPC must ensure that the inmates receive *de novo* hearings, which are

conducted before neutral and detached hearing bodies.

F.  POST–HEARING NOTICE

i.  The USPC must mail a Notice of Action containing the results of the hearing to both the inmate and his attorney within a reasonable time.